UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
WDNC Civil Action No. 3:26-cv-765

TEAM CONTI LLC,

Plaintiff,

v.

KENNETH BIRON d/b/a RYCO-MOTORSPORTS.COM and RYCO-MOTOSPORTS.COM/IRACING SETUP SHOP,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS PURSUANT TO RULE 12(b)(1)**

Plaintiff Team Conti, LLC ("Team Conti") adopted Terms of Service ("Terms") for its website that govern the use of the website and of any items purchased from or through the website. The Terms also make binding arbitration the exclusive means of resolving "any dispute" arising out of or concerning the Terms or any of their provisions, "whether in contract, tort, or otherwise." In this action, Team Conti alleges that Biron engaged committed various commercial torts, all of which arise out of Biron's alleged mis-use of Team Conti's website and products purchased through the website. The Terms, in combination with the Federal Arbitration Act ("FAA"), and the N.C. Revised Uniform Arbitration Act ("NCRUAA"), require Team Conti to submit those claims to binding arbitration. The Court should, therefore, grant this motion, stay this action, and compel Team Conti to arbitrate or, alternatively, dismiss this action for lack of subject matter jurisdiction.

Team Conti's Allegations and Basis for Demand for Arbitration[1]

Team Conti sells iRacing vehicle "setups"—essentially, software parameters applicable to the racecars used in iRacing, a racing simulation—through its website, teamconti.gg. The Terms govern use of the website,[2] *see* (Decl. of K. Biron Ex. A p 1); the Terms also govern the use of products purchased through the website. *See* (Decl. of K. Biron, Ex. A p 3). The Terms also contain the following mandatory arbitration provision:

> In the event the parties are not able to resolve any dispute between them arising out of or concerning these Terms and Conditions, or any provisions hereof, whether in contract, tort, or otherwise at law or in equity for damages or any other relief, then such dispute shall be resolved only by final and binding arbitration pursuant to the Federal Arbitration Act, conducted by a single neutral arbitrator and administered by the American Arbitration Association . . . . The parties agree to arbitrate all disputes and claims in regards to these Terms and Conditions or any disputes arising as a result of these Terms and Conditions, whether directly or indirectly, including Tort claims that are a result of these Terms and Conditions. The parties agree that the Federal Arbitration Act governs the interpretation and enforcement of this provision. The entire dispute, including the scope and enforceability of this arbitration provision shall be determined by the Arbitrator.

---

[1] Biron does not intend this summary as a concession of any particular allegation in the Amended Complaint. Biron denies many of those allegations and denies that he is liable in any way to Team Conti. Biron likewise believes that Team Conti has engaged in commercial misconduct, including the resale of Biron's setups without any substantial modification, and Biron intends to pursues those claims.

[2] The Terms were originally adopted in November 2023. (Decl. of K. Biron Ex. A p 7). They were updated in June 2026. (Decl. of K. Biron Ex. B p 8). The June 2026 update added provisions related to competitor use of the website; otherwise they appear the same as those originally adopted in November 2023, including in that both the November 2023 Terms and the June 2026 Terms each contain the same arbitration provision.

(Decl. of K. Biron Ex. A pp 4–5).

In this action, Team Conti alleges that Biron, an iRacing competitor, used a fictitious profile to purchase setups from Team Conti's website and then re-sold them as his own. (Am. Compl. ¶ 1). Any such claim arises out of or concerns the Terms, which provide that website users "will not modify, publish, transmit, reverse engineer, participate in the transfer or sale, create derivative works, or in any way exploit any of the content, in whole or in part, found on the Site." (Decl. of K. Biron Ex. A p 3). Team Conti must, therefore, arbitrate the claims in this action, and the Court should compel it to do so.

<u>Argument</u>

## I. Standards applicable to Motions under the FAA, the NCRUAA, and Rule 12(b)(1).

### A. <u>The FAA.</u>

The FAA, 9 U.S.C. § 1 *et seq.*, reflects a strong federal policy in favor of arbitration. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 273 (4th Cir. 1997) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Thus, where the parties have agreed to arbitrate claims, "[c]ourts must rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 228 (2013) (quotation omitted), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *O'Neil*, 115 F.3d at 273.

### B. <u>The NCRUAA.</u>

In North Carolina, the NCRUAA's procedural provisions gap fills the FAA's broad requirements.[3] *See AP Atl., Inc. v. Crescent Univ. City Venture, LLC*, 2016 NCBC 58, at *28 (N.C. Super. Ct. July 28, 2016) (quoting *Cold Springs Ventures, LLC v. Gilead Scis., Inc.*, 2014 NCBC LEXIS 10, at *8 (N.C. Super. Ct. Mar. 26, 2014)). Thus, where the FAA is silent, the Court should look to and apply the provisions of the NCRUAA with respect to this motion and the enforcement of the parties' agreement to arbitrate.

C. <u>Rule 12(b)(1).</u>

Rule 12(b)(1) governs dismissals for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When parties move to compel arbitration and request a stay, courts should stay proceedings rather than dismiss them. *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024). But, "where all the claims at issue in a lawsuit are arbitrable, but neither party has requested a stay, the court may dismiss the lawsuit for lack of subject matter jurisdiction."[4] *Giordano v. Experian Info. Sols., Inc.*, 2026 U.S. Dist. LEXIS 199819, at *3 (W.D.N.C. Sept. 3, 2026) (citing *Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, 792 F. Supp. 2d 897, 900 (E.D.N.C. 2011)).

---

[3] The Terms provide that "[t]o the maximum extent permitted by law, this agreement [i.e., the Terms] is governed by the laws of the State of North Carolina." (Decl. of K. Biron Ex. A p 6).

[4] Biron acknowledges, of course, that he seeks a stay by way of his motion; he brings his Rule 12(b)(1) motion solely as an alternative in the event the Court determines that a stay would be inappropriate.

## II. Team Conti must arbitrate this Dispute.

Team Conti's claims arise out of or concern the Terms in that each of those claims involve the alleged unauthorized access to or misuse of Team Conti's setups. As a result, the Terms' arbitration clause applies.

A. <u>The Court should enter a temporary stay pending disposition of Biron's motion to compel arbitration.</u>

Section 1-569.7(e) of the North Carolina General Statutes, part of the NRUAA, provides that "[i]f a party makes a motion to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section." North Carolina law thus protects a party's right to arbitrate by ensuring that no case deadline (including deadlines to answer, participate in pre-discovery conferences, or respond to discovery) force a party to engage in litigation while a motion to compel arbitration remains pending. Biron has alleged that this entire claim is subject to the Terms' arbitration clause and this Court should, therefore, stay these proceedings until it can resolve whether and to what extent the parties must arbitrate the dispute.

B. <u>The parties agreed to arbitrate.</u>

Typically, a motion to compel arbitration requires the Court to determine whether "the making of the agreement for arbitration" is "in issue." 9 U.S.C. § 4. That inquiry proceeds in two steps. Once the movant comes forward with evidence of "a written agreement that includes an arbitration provision that purports to cover the dispute," the party opposing arbitration "must make an unequivocal denial that an arbitration agreement exists—and must also show sufficient facts in support."

*Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). "This standard is akin to the burden on summary judgment." *Id.*; *see Zhu v. USAA Fed. Sav. Bank*, No. 3:25-cv-01027-KDB-DCK, slip op. at 5–6 (W.D.N.C. Apr. 22, 2026) (Doc. No. 19) (compelling arbitration where opposing party's showing fell "far short of an 'unequivocal denial'").

Biron has come forward with a written arbitration agreement that covers this dispute. The arbitration clause requires arbitration of any dispute arising out of or concerning the Terms or any provision of the Terms. The Terms apply to all aspects of a person's use of the website, including the purchase and potential resale of setups. Thus, any dispute concerning the use or misuse of the website or the purchase or sale of the setups would come within the broad provisions of the arbitration clause. This case is about Biron's alleged misuse of the website and his purchase and resale of setups. Those claims arise out of or concern the Terms.

Team Conti cannot, meanwhile, deny the making of the agreement. Team Conti alleges that Biron "accepted Team Conti's Terms of Service" when creating each account. (Am. Compl. ¶¶ 15–16). Those allegations are judicial admissions that bind Team Conti. *See Bright v. QSP, Inc.*, 20 F.3d 1300, 1305 (4th Cir. 1994). Team Conti also relies on the Terms to establish personal jurisdiction, to define the conduct it claims was prohibited, and to justify terminating the account in question. (Am. Compl. ¶¶ 15–18, 92, 124, 162). A party that invokes a contract to establish jurisdiction and liability cannot disclaim the arbitration clause in that same contract. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411,

418 (4th Cir. 2000). The parties thus made an agreement to arbitrate—on Team Conti's own allegations, and on terms Team Conti wrote.

C. The parties delegated questions of arbitrability to the arbitrator.

With the making of the agreement established, the next question is whether the contract assigns disputes about arbitrability to the arbitrator. *See Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 241 (4th Cir. 2025). Parties are free to delegate such questions, which include whether their arbitration agreement "covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 65 (2019).

The delegation must be clear and unmistakable. *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012). But no magic words are required; to meet the clear and unmistakable standard, an agreement must only "contain language specifically and plainly reflecting the parties' intent to delegate disputes regarding arbitrability to an arbitrator." *Novic v. Credit One Bank, Nat'l Ass'n*, 757 F. App'x 263, 265–66 (4th Cir. 2019); *see Zhu,* slip op. at 7. Language expressly committing the "enforceability" or "applicability" of the arbitration provision to the arbitrator satisfies the requirement. *See Brookdale Senior Living Inc. v. Weir*, No. 3:20CV293-GCM, 2021 U.S. Dist. LEXIS 147259, at *7 (W.D.N.C. Aug. 5, 2021); *see also Galloway v. Priority Imps. Richmond, LLC*, No. 20-1020, 2023 U.S. App. LEXIS 3172, at *3 (4th Cir. Feb. 9, 2023) (finding that an agreement that defined

"Dispute" to include "any question as to whether something must be arbitrated" was sufficient to delegate threshold questions to arbitrator).

The Terms satisfy that standard in a single sentence: "The entire dispute, including the scope and enforceability of this arbitration provision shall be determined by the Arbitrator." (Decl. of K. Biron Ex. A p 5). It is difficult to imagine a plainer statement that the arbitrator, not a court, decides what the Terms' arbitration clause covers and whether it can be enforced. The arbitration clause also provides for administration by the American Arbitration Association, whose rules empower the arbitrator to rule on his or her own jurisdiction. *See Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 527–28 (4th Cir. 2017).

Thus, the parties agreed to arbitrate and to have an arbitrator decide which disputes are within the scope of their agreement. The Court should "rigorously enforce" that agreement, *Italian Colors Rest.*, 570 U.S. at 228, stay these proceedings, and compel the parties to arbitrate.

C. <u>Team Conti's claims are arbitrable.</u>

The Court should not reach this issue, but if it does, it should find that each of Team Conti's claims are arbitrable. Agreements to arbitrate are construed according to ordinary rules of contract interpretation, "as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 710 (4th Cir. 2001). Here, the arbitration clause reaches "any dispute . . . arising out of or concerning these Terms and Conditions," "whether in contract, tort, or otherwise," and expressly includes "Tort

claims that are a result of these Terms and Conditions," whether arising "directly or indirectly." (Decl. of K. Biron Ex. A p 4). Language of this kind is broad and embraces every dispute having "a significant relationship to the contract." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996).

Team Conti's claims are built on the Terms. It alleges that Biron accepted the Terms to open the accounts through which every challenged purchase was made (Am. Compl. ¶¶ 15–17), that his purchases violated the Terms' Competitor Purchase Prohibition (*id.* ¶ 124), and that it terminated the account for violating the Terms (*id.* ¶ 92). Recasting those allegations as fraud and Chapter 75 claims does not take them outside an agreement that expressly covers tort claims. Nor do the Terms' other provisions change the result: the clause consenting to the jurisdiction of "courts in North Carolina" is readily consistent with an arbitration provision that itself contemplates entry of judgment on an award "in any court having jurisdiction," and general language preserving Team Conti's right to pursue "legal remedies" does not override the specific command that disputes "shall be resolved only by final and binding arbitration." Every claim Team Conti pleads is one that it agreed to arbitrate, and the Court should enforce that agreement.

## III. Alternatively, the Court should dismiss this Action for Lack of Subject Matter Jurisdiction.

If the Court concludes that Team Conti's claims must be arbitrated but that a stay is inappropriate, then Biron alternately requests that the Court dismiss this action for lack of subject matter jurisdiction. *Giordano*, 2026 U.S. Dist. LEXIS 199819, at *3.

Conclusion

Team Conti adopted the Terms, alleges that Biron accepted the Terms, and alleges conduct in violation of the Terms. The Terms' arbitration clause applies. The Court should, therefore, stay these proceedings and compel arbitration or, alternatively, dismiss this action for lack of subject matter jurisdiction. The Court should also stay these proceedings on an emergency and temporary basis until such time as the Court can resolve this motion.

This 29th day of October, 2026.

Respectfully,

VILLMER CAUDILL
BUSINESS & LITIGATION ATTORNEYS

By: /s/ Darrion Holloway

Bo Caudill
N.C. Bar No. 45104
bocaudill@villmercaudill.com
Darrion Holloway
N.C. Bar No. 52201
darrionholloway@villmercaudill.com
VILLMER CAUDILL, PLLC
P.O. BOX 18186
Charlotte, NC 28218
Tel: 704-216-8120
Fax: 704-705-8191
*Counsel for Kenneth Biron*